IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 14-cv-01024-REB-KMT

MICHAEL RAY INGRAM,

    Plaintiff,

v.

DEAN WILLIAMS,
R. WERHOLZ,
R. RAEMISCH,
J. FALK, Sterling Correctional Facility (SCF) Warden,
J. CHAPDELAINE, SCF Associate Warden,
K. MCKAY, SCF Physician's Assistant,

    Defendants.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

**Blackburn, J.**

This matter is before me on the following: (1) **Defendant Keri McKay's Motion for Summary Judgment** [#195][1] filed March 26, 2020; and (2) the **State Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a)** [#214] filed August 10, 2020. The plaintiff has had many months to file responses to the two motions, but he has not. I grant both motions and direct entry of judgment in favor of the defendants.

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to

---

[1] "[#195]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

judgment as a matter of law.[2] **FED. R. CIV. P.** 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Farthing*, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994), *cert. denied*, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III. BACKGROUND

The plaintiff, Michael Ingram, is an inmate in the Colorado Department of Corrections. In his first amended complaint [#21], he alleges that the defendants violated his Eighth

---

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(a)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that any hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

Amendment right to be free from cruel and unusual punishment. In addition, he asserted claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Defendants Williams, Werholz, Raemisch, Falk, Chapdelaine, and McKay filed motions to dismiss [#45 & #56]. The court entered an order [#69] granting the motions to dismiss and entering judgment in favor of the defendants.

Mr. Ingram filed an appeal. Ultimately, the United States Court of Appeals for the Tenth Circuit entered an order [#95] reversing, in part, the order [#69] granting the motions to dismiss. The Tenth Circuit reinstated certain claims in the first amended complaint against certain defendants. Specifically, the Tenth Circuit reinstated the ADA and Rehabilitation Act claims against defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams. In addition, the Tenth Circuit reinstated the Eighth Amendment claim against defendant McKay. The subject matter which the Tenth Circuit determined gives rise to the ADA and Rehabilitation Act claims is limited to Ingram's allegations about his access to medication. The Tenth Circuit made clear that the Eighth Amendment claim, which pertains to his assignment to work in the prison kitchen, was raised only against Defendant McKay. Otherwise, the Tenth Circuit affirmed the order [#69] granting the motions to dismiss.[3]

In their motion for summary judgment [#195], defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams seek summary judgment on the ADA and Rehabilitation Act claims against them. I will refer to this group of defendants as the state defendants. In her motion for summary judgment, defendant McKay seeks summary judgment on the Eighth Amendment claim against her. These are the remaining claims and defendants in this case.

---

[3] Following the remand by the Tenth Circuit, Ingram substituted his official capacity claim against defendant Clements, the former CDOC Executive Director, with an official capacity claim against the current Executive Director, Dean Williams. [Docs. #145, 150, 152]. For this reason, Williams joins defendants Raemisch, Werholz, Falk, and Chapdelaine in the motion [#214] fo summary judgment.

## IV.  UNDISPUTED FACTS

### A.  ADA & Rehabilitation Act Claim - State Defendants

At all times relevant to this case, the plaintiff, Michael Ingram, was incarcerated at the Sterling Correctional Facility (SCF), a part of the Colorado Department of Corrections (CDOC).  Defendant Raemisch was employed as the CDOC's Executive Director from July 22, 2013 until his retirement from the position on January 8, 2019.  Defendant Werholz was employed by the CDOC as its Interim Executive Director from April 22, 2013 until his retirement from the CDOC on July 31, 2013.  Defendant Falk was employed as Warden and Deputy Director of Prisons with the CDOC from December 15, 1995 until his retirement on January 31,2019.  Defendant Chapdelaine was employed as Warden with the CDOC from July 1, 2001 until his retirement on October 31, 2016.  Defendant Williams is the current Executive Director of the CDOC.

Ingram had a medical visit with Dr. Goldsmith on December 17, 2008.  Ingram told Dr. Goldsmith that he (Ingram) had been experiencing a burning sensation in his feet which made it difficult for him to stand for a long period of time. Dr. Goldsmith issued Ingram a medical work restriction which prohibited Ingram from standing for more than 30 minutes. Dr. Goldsmith also ordered x-rays of Ingram's lower back and hips. *Motion* [#214],Exhibit E [#214-5].  Ingram identified a choking cough, neck pain, back spasms, foot pain, knee pain, lower back pain, left hip pain, and a sense of constriction in his chest as his physical ailments. *Id.*

Exhibit F [#214-6] to the state defendants motion for summary judgment [#214] contains excerpts from the deposition of Ingram, which was taken on January 29, 2020.  The state defendants rely on Ingram's sworn testimony in support of their motion.

When Ingram was asked to describe the actions defendant Raemisch took which violated Title II of the ADA and the Rehabilitation Act (or conduct which he contends is

4

otherwise unlawful), Ingram testified only that he holds defendant Raemisch "responsible for continuing the way the system functions." *Exhibit F* [#214-6], 49:1-21.  When Ingram was asked to describe what actions defendant Werholz took which he believes violated Title II of the ADA and the Rehabilitation Act, Ingram testified that he named Werholz "because he became the executive director and, as a result, he would then be responsible as far as the injunctive… relief." *Exhibit F* [#214-6], 48:1-13. Ingram also testified that he named Werholz as a defendant only because he felt he was responsible for the "system" working improperly. *Id.,* 49:9-16.

Ingram also testified about the "warden" at SCF. While he does not identify the Warden by name, it appears he was referring to Defendant Falk. Ingram testified that he wrote a letter to Falk informing him about how it was improper to assign him to the kitchen. *Exhibit F* [#214-6], 27:19-28:2. This testimony applies to the Eighth Amendment claim which the Tenth Circuit held is applicable only to Defendant McKay, not Defendant Falk or any of the state defendants. Ingram's deposition does not contain any claims about defendant Falk's wrongdoing as it pertains to Ingram being required to wait in line for medication.

When Ingram was asked to describe what acts or omissions defendant Chapdelaine took that he believed violated Title II of the ADA and the Rehabilitation Act, he testified that Chapdelaine, who was the Associate Warden, had informed him that he (Ingram) had filed 21 frivolous grievances. *Exhibit F* [#214-6], 49:22-25; 51:3-17. He could not ascribe any additional purported misconduct to Chapdelaine.  When Ingram was asked if he sent letters or grievances to any Wardens or Executive Directors specifically regarding his complaints about standing in med line, he testified only that he "thinks" he "probably" did so. *Exhibit F* [#214-6], 75:1-8.

Ingram has brought ADA and Rehabilitation Act claims against defendant Williams in his official capacity and as a successor in interest to Rick Raemisch and/or Tom

5

Clements, who served as Executive Director of the CDOC during the time the facts underlying the claims in Ingram's First Amended Complaint allegedly took place. Ingram complains about having to stand in med line to wait for his medications for 20 to 35 minutes, and asserts that doing so causes him physical discomfort. However, Ingram did not testify that CDOC staff are denying him his medication or that he is incapable of standing in line. *Exhibit F* [#214-6], pp. 64-68.

## B. Eighth Amendment - Defendant Keri McKay

At all times relevant to this case, defendant McKay was a Physician's Assistant working on a contract basis with the CDOC and assigned to work at the Sterling Correctional Facility. On December 17, 2008, Ingram was seen by Dr. Goldsmith. Ingram told the doctor that he had burning in his feet that was very annoying and made it difficult for him to stand for long periods of time. Dr. Goldsmith issued Ingram a medical work restriction which prohibited prolonged standing beyond 30 minutes and ordered x-rays of Ingram's lower back and hips. *Motion* [#195], Exhibit A [#195-1]. The x-rays ordered by Dr. Goldsmith showed a normal pelvis and mild degenerative arthritic changes to both of Mr. Ingram's hips. *Exhibit B* [#195-2].

Ingram was seen by Medical Provider Kathleen Melloh on May 26, 2010. Mr. Ingram asked to be scheduled to have his feet evaluated. He told Melloh that Dr. Goldsmith had given him a work restriction for no prolonged standing, and he would like to get that back because he was working in the library. He was currently doing plantar fasciitis exercises which helped. Melloh noted in Ingram's medical record that she instructed Ingram to keep doing the exercises and she would schedule a follow up appointment to discuss his plantar fasciitis. *Exhibit C* [#195-3].

On June 24, 2010, Mr. Ingram met with medical provider Melloh to discuss the evaluation of his feet. There were no erythema, edema, or ecchymosis on Ingram's feet. He was able to hold himself up on his toes without problem. His posterior heels were neutral, and

6

his arches presented without pronation of his feet. Melloh ordered Ingram to stop taking Naprosyn for pain for three days, then they would administer injections of Depo-Medrol in his heels for the pain. *Exhibit D* [#195-4]. Ingram received the Depo-Medrol injections on June 30, 2010. *Exhibit E* [#195-5].

On July 23, 2010, Ingram had his follow up appointment with Melloh. At that time, Ingram told Melloh that he did get some relief from the injections, which he rated at 30% improvement. However, Melloh reminded Ingram that she had seen him in the prison yard earlier in the week, and he had told her that his feet felt very good and he was happy with the injections. Ingram also told Melloh that he could walk around much better. *Exhibit G* [#196-1].

On March 23, 2012, Ingram submitted Offender Request for Accommodation forms, asserting a claim of disability for ankle pain, knee pain, lower lumbar pain and spasms, hip arthritis, arthritic neck pain, and pain from plantar fasciitis, among many other listed injuries. *Exhibit H* [#196-2]. Ingram worked in the dish room of the SCF kitchen from April 6, 2012 through May 7, 2012. *Amended complaint* [#21], CM/ECF p. 8, ¶ 18 (includes declaration under penalty of perjury). Ingram was given his first ADA Mobility Evaluation on April 24, 2012. *Exhibit I* [#196-3].

On May 2, 2012, defendant McKay saw Ingram when he went to the SCF medical unit for multiple issues. His biggest issue was concerning his chronic cough, but he also complained of foot pain due to plantar fasciitis. He told McKay that working in the kitchen was causing him to stand for several hours a day and his feet were killing him. He also told McKay that his hip was bothering him as well, especially with the standing, twisting, and lifting that he had to do in the kitchen. McKay told Ingram that when his pain was acting up, he needed to take his Naprosyn, and that she would email his Case Manager, Lt. Scott Sturgeon, about relocating him from working in the kitchen for health reasons, and not wanting him to cough over the food or dishes being used by others. *Exhibit J* [#196-4]. McKay also requested a

7

medical staffing to review Ingram's medical issues and job placement on May 2, 2012. *Exhibit K* [#196-5].

According to Ingram's CDOC Inmate Chronological Records, on May 2, 2012, his Case Manager, Lt. Scott Sturgeon, spoke with him about his medical issues and his assignment in the kitchen. *Exhibit L* [#196-6]. Ingram was removed from his kitchen job on May 7, 2012, because of McKay's email to Lt. Sturgeon. *Amended complaint* [#21], CM/ECF p. 8, ¶ 18 (includes declaration under penalty of perjury).

Ingram was given his second ADA Mobility Evaluation on May 8, 2012. *Exhibit N* [#197-2]. On May 22, 2012, Ingram's ADA Mobility Disability Evaluation was completed. The CDOC determined that Ingram did not meet the criteria for permanent disability. *Exhibit O* [#197-3].

Ingram was re-assigned to the SCF kitchen on June 14, 2012, and worked in the diet kitchen. *Amended complaint* [#21], CM/ECF p. 8, ¶ 21 (includes declaration under penalty of perjury). The medical staffing requested by McKay to address Ingram's medical issues and job placement was held on June 19, 2012. RN Ryder May, and RN Jamie Vanmeter were present during the staffing along with McKay and Ingram. With regard to Ingram's request for work restrictions, it was confirmed to Ingram that he did have a restriction for no prolonged standing for more than 30 minutes without a break, and he was told to contact his case manager if his work supervisors were making him go against his restriction. The medical staff also confirmed Ingram's understanding that if he could rest for a few minutes and then return to work, that this would be meeting his restriction requirements. Nurse Ryder also agreed to contact the kitchen to discuss his issues with the prolonged standing for more than 30 minutes. *Exhibit P* [#197-4].

From July 21, 2012, until the end of November 2017, Ingram periodically worked in the SCF kitchen and was assigned to various jobs. In November 2017, he was re-assigned to

work in the library.  No one from SCF medical specifically assigned Mr. Ingram to work in specific kitchen positions.  Ingram's work assignments were something that was determined by the security and CDOC personnel who worked in the kitchen. *Exhibit M* [#197-1] (Ingram deposition) 101:24 – 102:16.

Another medical staffing was held on October 30, 2012. Present were Dr. Fauvel, Ms. McKay, ADA Coordinator B. Scott, Case Manger Josh Dorsey, and Nurses Ryder, May, D. Tramp, L. Holter and N. Wilson. Mr. Ingram was given a release of records to sign, releasing SCF medical to speak about his medical conditions to the ADA Coordinator and his Case Manager. Mr. Ingram refused to sign the release and stated that if anyone had anything to say that it had to be in writing.  It was explained to Mr. Ingram that this staffing was his opportunity to discuss his requests with his medical providers as well as the ADA Coordinator, but Mr. Ingram again stated that he didn't wish to discuss anything with the group and requested to leave.  *Exhibit R* [#197-6].

## V.  ANALYSIS

### A.  ADA & Rehabilitation Act Claim - State Defendants

To establish a failure to accommodate claim under the ADA, a plaintiff must show:

(1) that he or she is a qualified individual with a disability;

(2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;

(3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability; and

(4) that the defendant knew he or she was disabled and required an accommodation.

*J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1295, 1299 (10th Cir. 2016).

To demonstrate he is entitled to protection under Section 504 of the Rehabilitation Act, a plaintiff must show that "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise

9

qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." **Hollonbeck v. U.S. Olympic Comm.**, 513 F.3d 1191, 1194 (10th Cir. 2008). Because the required showings under the ADA and the Rehabilitation Act are substantially similar, the same analysis can be generally applied to both. **Cohon ex rel. Bass v. New Mexico Dep't of Health**, 646 F.3d 717, 726 (10th Cir. 2011).

"To satisfy the ADA's definition of disability, a plaintiff must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities." **Berry v. T-Mobile USA, Inc.**, 490 F.3d 1211, 1216 (10th Cir. 2007).

To the extent Ingram asserts a failure to accommodate claim against defendant Williams in his official capacity, this claim is, effectively, a claim against the CDOC. A plaintiff may assert such a claim and seek prospective relief. **Bruggeman v. Blagojevich**, 324 F.3d 906, 912-13 (7th Cir. 2003). Assuming without deciding that Ingram has established that he has one or more qualifying disabilities, his official capacity claim fails.

The undisputed facts in the record do not support a finding that Ingram has been denied any service or program as a result of one of his disabilities. As to this claim, Ingram says he often is required to stand in the med line and wait for his medications for 20 to 35 minutes. He says standing for that long causes him discomfort. However, he has not shown that being required to stand in the med line results in a denial of his medication or that his access to medication is unduly delayed. He does not contend he is physically incapable of standing in the med line. The undisputed facts in the record do not support a finding that the CDOC has delayed or denied Ingram's access to his medicine by reason of a disability. Defendant Williams is entitled to summary judgment on the official capacity ADA and Rehabilitation Act claim.

To the extent Ingram asserts a Title II ADA and Rehabilitation Act claim against defendants, Werholz, Raemisch, Falk, and Chapdelaine, in their official capacities, these defendants are entitled to summary judgment. Only prospective injunctive relief is available on such a claim. ***Bruggeman v. Blagojevich***, 324 F.3d 906, 912-13 (7th Cir. 2003). Werholz, Raemisch, Falk, and Chapdelaine no longer work for the CDOC. So, even if Ingram established and ADA or Rehabilitation Act claim, the court could not compel these defendants to implement changes which would provide relief to Ingram. Thus, defendants, Werholz, Raemisch, Falk, and Chapdelaine, are entitled to summary judgment on any ADA or Rehabilitation Act claim asserted against them in their official capacities.

To the extent Ingram asserts a Title II ADA and Rehabilitation Act claim against any defendant in his or her individual capacities, those claims are unfounded as a matter of law. "[I]ndividual defendants in their individual capacities are not properly subject to suit under the Rehabilitation Act or the Disability Act." ***Montez v. Romer***, 32 F.Supp.2d 1235, 1241 (D. Colo. 1999). Accordingly, defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams, are entitled to summary judgment on the Title II ADA and Rehabilitation Act claims asserted against them in their individual capacities.

### B. Eighth Amendment - Defendant McKay

Deliberate indifference to serious medical needs can be a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." ***Helling v. McKinney***, 509 U.S. 25, 32 (1993) (quotation omitted). To state a claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show that the defendant was deliberately indifferent to his serious medical needs. ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976).

"The test for constitutional liability of prison officials [under the Eighth Amendment] involves both an objective and a subjective component." ***Mata v. Saiz***, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citation omitted). First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.' " ***Id***. (quoting ***Farmer v. Brennan***, 511 U.S. 825, 834 (1994)). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." ***Mata***, 427 F.3d at 751 (holding that even a physician's grossly negligent medical judgment is not subject to scrutiny if the prisoner's need for medical treatment was not obvious) (internal quotations and citation omitted). Furthermore, a delay in medical care "only constitutes an Eighth Amendment violation when the plaintiff can show the delay resulted in substantial harm." ***Oxendine v. Kaplan***, 241 F.3d 1272, 1276 (10th Cir.2001) (quotations and citation omitted). The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain." ***Garrett v. Stratman***, 254 F.3d 946, 950 (10th Cir. 2001) (citation omitted).

Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind." ***Mata***, 427 F.3d at 751. "Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain." ***Estelle***, 429 U.S. at 104 (internal quotation and citation omitted).

Ingram has not established an Eighth Amendment violation by McKay. Ingram claims McKay was deliberately indifferent to the dangers posed by approving Ingram for kitchen work which required prolonged standing and heavy lifting. The undisputed facts in the record do not support a finding that McKay exhibited deliberate indifference to Ingram's serious medical needs. As detailed above, McKay frequently provided or coordinated provision of effective

12

treatments to Ingram. In addition, McKay provided or coordinated provision of medical orders limiting standing by Mr. Ingram to 30 minutes. The record reflects McKay's efforts to help Mr. Ingram manage his pain, as well as McKay's subjective belief that Mr. Ingram could continue to work in the SCF kitchen with a restriction in place limiting standing. McKay never had the power to control what job assignment Ingram received. The undisputed facts in the record show McKay did not engage in extraordinary neglect of Ingram's medical condition or his need for medical care. Rather, the undisputed facts in the record show McKay properly and repeatedly exercised her considered medical judgment as to Mr. Ingram. That is the opposite of deliberate indifference. Defendant McKay is entitled to summary judgment on the Eighth Amendment claim.

## VI.  CONCLUSION & ORDERS

Viewing the undisputed facts in the record in the light most favorable to the plainitff, defendants, Werholz, Raemisch, Falk, Chapdelaine, and Williams, are entitled to summary judgment on the ADA and Rehabilitation Act claims. Defendant McKay is entitled to summary judgment on the Eighth Amendment claim. These claims are the only claims pending in this case. I grant the motions for summary judgment [#195 & 214] and direct the entry of final judgment in this case.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant Keri McKay's Motion for Summary Judgment** [#195] is granted;

2. That the **State Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56(a)** [#214] is granted;

3. That based on this order, the **Order Adopting Recommendation of United States Magistrate Judge** [#69], and the **Order To Dismiss in Part and To Draw in Part** [#23], judgment shall enter in favor of the defendants, Dean Williams, R. Werholz, R. Raemisch, John and Jane Does at the Colorado Department of Corrections, J. Falk, Sterling Correctional

Facility (SCF) Warden, J. Chapdelaine, SCF Associate Warden, John and Jane Does at SCF, John and Jane Does, SCF Job Board, K. Mckay, SCF Physician's Assistant, Physicians Health Partners, Inc., dba Correctional Health Partners, a Colorado Corporation, and John and Jane Does, Physicians Health Partners, Inc., dba Health Partners, a Colorado Corporation, and against the plaintiff, Michael Ray Ingram;

4. That under 28 U.S.C. § 1915(e)(B)(2)(I), the claims for violation of equal protection (claim two), ADA (claim three), and Rehabilitation Act (claim four) are dismissed as legally frivolous based on the order at [#23];

5. That under Fed. R. Civ. P. 56, the ADA and Rehabilitation Act claims against defendants Werholz, Raemisch, Falk, Chapdelaine, and Williams are dismissed based on this order;

6. That under Fed. R. Civ. P. 56, the Eighth Amendment claim against defendant McKay is dismissed based on this order;

7. That under Fed. R. Civ. P. 12(b)(6), all other claims are dismissed based on the order at [#69];

8. That the defendants are awarded their costs to be taxed by the clerk in the time and manner required under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

9. That this case is closed.

Dated March 30, 2021, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge